DECISION
{¶ 1} Relator, Laura Lovejoy, (hereinafter "relator") filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent School Employees Retirement System (hereinafter "SERS") to vacate its order denying her August 2000 application for disability retirement benefits and to grant the application, or, in the alternative, to reconsider her application, excluding reports from Drs. Wolfe, Clary and others, but including the July 2001 report of Dr. Walters.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded relator failed to establish in mandamus SERS abused its discretion in asking Dr. Wolfe to serve as a medical examiner. Additionally, relator did not meet her burden of proving Dr. Wolfe was ineligible to serve as an examining physician under the statutory requirement for "disinterested physician." The magistrate found no patent inconsistency between Dr. Wolfe's clinical findings and her medical opinions, nor between her medical opinions and the objective tests reviewed in her report. Instead, Dr. Wolfe simply did not agree with the medical opinions of Drs. Stockwell and Walters that the clinical presentation and medical file warranted the conclusion relator was incapacitated for the next 12 months from performing her duties. Further, the magistrate concluded SERS did not abuse its discretion in relying on the medical report of Dr. Clary as it mentions all the psychiatric conditions which relator claimed to have.
 {¶ 3} SERS also did not abuse its discretion in relying on the recommendation of its medical advisory committee as there was no evidence of any interest which would render any of the committee members ineligible to participate in the task of providing medical recommendations to the SERS Board. Finally, the magistrate concluded relator failed to meet her burden of proving Dr. Walters' report of July 2001 presented new medical information to the Board on appeal it had not previously considered. Accordingly, it was the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 4} Relator filed objections to the decision of the magistrate arguing the magistrate incorrectly concluded the SERS' examiner, Dr. Wolfe, satisfied the requirement of R.C. 3309.39(C) that the SERS' examining physician be "disinterested." Additionally, relator contends the magistrate erred in concluding there was no patent inconsistency among Dr. Wolfe's clinical finding, disability opinion and the objective test results. Instead, the magistrate characterized the issue as a medical disagreement between Dr. Wolfe and relator's doctors, Stockwell and Walters. Further, relator argues Dr. Clary's report must be evaluated as it is worded. He did not rule out the present diagnosis "panic attack" which was rendered by both Drs. Tadepalli and Walters. Relator asserts this court should not adopt the magistrate's medical conclusion that Dr. Clary adequately addressed this issue. Additionally, relator contends the magistrate's determination that a doctor who participated in a prior application process is unable to review a current medical presentation with an open mind holds SERS to a lesser standard than "fundamental fairness and evidentiary reliability." Finally, relator argues Dr. Walters' report constitutes "additional objective medical evidence" and its consideration should be ordered.
 {¶ 5} Following independent review, pursuant to Civ.R. 53, we find the magistrate properly determined the pertinent facts and applied the salient law to them. Relator's objections to the magistrate's decision are overruled and we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Bowman and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Laura Lovejoy, : Relator, : v. : : No. 03AP-34 School Employees Retirement System, : (REGULAR CALENDAR) Respondent. :
 MAGISTRATE'S DECISION Rendered on May 29, 2003. IN MANDAMUS {¶ 6} In this original action in mandamus, relator, Laura Lovejoy, asks the court to issue a writ compelling respondent, School Employees Retirement System ("SERS"), to vacate its denial of her August 2000 application for disability retirement benefits and to grant the application, or, in the alternative, to reconsider her application, excluding reports from Drs. Wolfe, Clary, and others, but including the July 2001 report of Dr. Walters.
 Findings of Fact {¶ 7} 1. Relator drove a bus for the Xenia City School District for 16 years. She last worked in June 1997 and applied for disability retirement benefits based on connective tissue disorder and fibromyositis complicated by depression and anxiety.
 {¶ 8} 2. In October 1997, relator was examined for SERS by Seth M. Kantor, M.D., who found no sign of a connective tissue disorder and concluded that her physical complaints were worsened by depression. A psychiatrist, Phillip Edelstein, M.D., found that relator, in her current state, would not be competent to operate a school bus for at least 12 months. Accordingly, in December 1997, SERS granted disability benefits as of July 1997, with a reexamination to take place after one year.
 {¶ 9} 3. In 1999, SERS reevaluated relator's disability status. In a new report, Dr. Edelstein found that relator's psychiatric condition had improved since 1997 and that she was no longer incapable of resuming her duties as a school bus driver. Claire V. Wolfe, M.D., provided a report focusing on the physical findings. Dr. Wolfe diagnosed myofascial pain syndrome but stated that "I do not believe that her fibromyalgia is in any way disabling for doing anything, nor do I believe that she has any significant lumbar disease that would preclude driving a school bus." Dr. Wolfe tended to agree that the psychological condition was causing more disability than the physical problems; however, based on her observations of relator during the examination, she concurred with Dr. Edelstein that relator was not disabled by depression. SERS terminated disability status, agreeing with the recommendation of its medical advisory board.
 {¶ 10} 4. Relator filed an appeal, submitting a new medical report from Charles L. Walters, M.D. However, SERS denied the appeal and upheld the termination of benefits.
 {¶ 11} 5. In August 2000, relator filed a new application for disability benefits. Frederick Stockwell, M.D., signed the attending physician's report on the application, opining that relator had been disabled from operating a school bus since August 1997.
 {¶ 12} 6. In August 2000, Dr. Stockwell provided an additional report, explaining that relator suffered from lumbar degenerative disc disease with sciatica and that she had fibromyositis with recurring exacerbations of pain all over. He reported that relator had chronic persistent depression with exacerbations, that she was easily fatigued, and did not have the stamina to perform her regular duties. Dr. Stockwell described worsening symptoms over the years and noted that, in recent months, her lumbar spine evaluation showed degenerative disc disease. He also noted that relator had "multiple other chronic medical problems" including hypothyroidism, irritable bowel syndrome, and a history of breast cancer currently in remission. Dr. Stockwell stated that relator had positive anti-nuclear antibody tests going along with her fibromyalgia and arthritic type symptoms, and he concluded that relator could not perform her duties as a school bus driver with sufficient comfort, endurance, and emotional stability.
 {¶ 13} 7. Relator also submitted numerous additional reports: an x-ray report from May 1997 indicating "mild" osteoarthritic changes of the spine with "mild" generalized deossification of the bones; a December 1998 x-ray of the lumbar spine showing "no significant interval change" from the prior x-ray; a December 1998 CT scan showing "mild" disc bulge at L4-5 with questionable effacement to the right L4 nerve root and a "mild, minimally compressive" disc bulge at L3-4 without lateralization; an x-ray and CT scan of March 2000 showing "mild" osteopenia and "mild" hypertrophic spurring at two lumbar levels, "mild" disc bulging at L3-4, L4-5 and L5-S1 with no herniation or spinal stenosis and "mild" foraminal narrowing/stenosis at L3-4 and L4-5; a lumbar MRI of August 2000 showing mild bulges at L2-3, L3-4 and L4-5 with mild effacement as well as mild arthropathy contributing to mild foraminal encroachment, no compressive disc displacement at L5-S1, mild central stenosis at L3-4, and no evidence of lumbar disc extrusion or high-grade stenosis; and an EMG in August 2000 that was within normal limits and showed no evidence of lumbar spinal nerve root injury, nerve entrapment, polyneuropathy, plexopathy, or primary muscle disease.
 {¶ 14} 8. In addition, relator submitted the report of Gayathri Tadepalli, M.D., a psychiatrist who had been treating relator since October 2000. Dr. Tadepalli stated that relator's disability had existed since the death of her son 12 years ago. Dr. Tadepalli certified that relator was incapacitated for at least 12 months from performing her duties as a school bus driver due to recurrent and severe major depression, panic attacks, degenerative disc disease, and fibromyositis.
 {¶ 15} 9. In October 2000, relator submitted an additional report from Dr. Stockwell in which he reported that relator's Paxil was increased to 30mg per day due to "worsening depression, increasing persistent fibromyalgia, back, and leg pain, and other chronic problems."
 {¶ 16} 10. In February 2001, relator was examined on behalf of SERS by a psychiatrist, Richard H. Clary, M.D., in regard to whether she was disabled from working as a school bus driver. Dr. Clary noted that relator was seeing a psychiatrist, Dr. Halley, who had prescribed Paxil at 40mg per day and 15mg of Remeron at bedtime. Dr. Clary further noted that Dr. Stockwell had prescribed the following medications: "Synthroid 0.1 mg. a day, Celebrex 200 mg. in the morning and 100 mg. at bedtime, Neurontin 100 mg. three times a day, and Hydrocodone four times a day for pain."
 {¶ 17} Relator reported to Dr. Clary that she could drive her car in Xenia but was not comfortable driving in Columbus. She reported being able to do cooking, cleaning, housework and laundry although her husband carried the laundry up and down stairs and did other heavy work. She reported that she functioned well until the onset of fibromyalgia when she began to have generalized pain in her muscles and joints. She reported that she stopped working because of her pain and not because of anxiety and depression.
 {¶ 18} Dr. Clary reported clinical observations including findings on mental content, flow of thought, sensorium and cognitive functioning. In regard to anxiety, he observed:
There were no motor manifestations of anxiety such as shaking or fidgeting. There is no diaphoresis or hyperventilation. She's had a history of situational anxiety off and on for many years dating back to her childhood but there is no clear history of panic attacks. There are no symptoms of PTSD.
 {¶ 19} In regard to affect and mood, Dr. Clary reported:
Her affect was reactive and appropriate and she smiled and laughed on several occasions but was also tearful during the evaluation. She said that her mood fluctuates from day to day but she describes a chronic depression dating back to her childhood. I do not find evidence for major depressive disorder. She maintained good eye contact during the evaluation and she said her appetite fluctuates up and down and she has gained weight because of her medication and problems with her thyroid. She said her sleep is better on the Remeron. She reports having crying spells 2-3 times a week because of her pain and was tearful today during part of the evaluation. There has been no homicidal or suicidal ideation and there is no psychomotor retardation or agitation. She has no guilt feelings and she said she doesn't know about the future. Her energy level varies from day to day but she has noted decreased libido. There is no anhedonia but she's had to limit many of her physical activities. * * *
 {¶ 20} Dr. Clary noted that relator had had problems with anxiety and depression for many years, since childhood. He reported that relator's insight was "good" although she had shown poor judgment years before when she was mixing tranquilizers and alcohol, which "has not been a problem for many years." As to disability, he stated:
In my medical opinion, her psychiatric conditions alone do not cause disability[.] There has actually been some partial improvement in her symptoms since she began having regular psychiatric treatment in October of 2000 but again, these are both chronic problems that have been present for many many years.
 {¶ 21} Dr. Clary concluded that relator was not mentally incapacited from performing her usual duties for at least 12 months.
 {¶ 22} 11. In February 2001, relator was examined by Dr. Wolfe on behalf of SERS in regard to her current physical condition. Dr. Wolfe noted that she had examined relator in December 1999 and had felt at that time that relator was not disabled on a neurologic or musculoskeletal basis. Relator stated that she was lucky to have one good day a month although the epidural blocks had helped and she was sleeping better since starting on Remeron. Relator reported numerous symptoms but noted that she had fewer cramps from irritable bowel syndrome since starting her current medication and was seeing a counselor for psychological therapy twice a month and a psychiatrist once a month for medication monitoring, which had helped. In addition, she was able to do her back exercises on a regular basis and found them helpful. Dr. Wolfe listed relator's medications:
Her current medications include Synthroid 100 mcg a day, Paxil 40 mg a day, Celebrex 200 mg in the morning and 100 mg at bedtime, Neurontin 100 mg three times a day, Remeron 15 mg at bedtime and hydrocodone 5/500 four times a day. Mrs. Lovejoy states that the pain medication helps when she has to do anything, even going to the store and shopping, it just does not last that long.
 {¶ 23} Dr. Wolfe described the examination:
* * * Her weight is up 33 pounds since I saw her in December, 1999. However, she does not look grossly obese on inspection and her weight is distributed evenly over her body.
Mrs. Lovejoy's station and gait were normal without any antalgia. She was able to stand on her heels and toes. She had no measurable atrophy of her thighs or her calves. She had no deformities of her knees or ankles. Her reflexes at the knees, adductors, medial hamstrings and ankles were all easily elicited, 3+ and symmetrical. her manual muscle testing was normal. Her straight leg raising in the seated position was unremarkable today at 70° bilaterally. Her low back range of motion was done with good cooperation and was normal with good segmental motion and no complaints of pain.
In the upper extremities, the reflexes were 2+ and symmetrical. Manual muscle testing was normal. Cervical range of motion was full with a feeling of pulling in her neck primarily with flexion and no discomfort with extension or extreme lateral rotation. Mrs. Lovejoy complained of pain in her hands, particularly on the left, when I asked her to do forced grip and ulnar finger abduction. She did not, however, have any evidence of swelling, warmth or synovitis in any of her joints. Her discomfort in her wrists was diffuse. Wrist range of motion was normal. Palpation revealed fairly dramatic tenderness over both wrists, her metacarpals bilaterally, her lateral epicondyles at the elbows, her anterior chest wall bilaterally, her levators and mid scapular paraspinals. She was not particularly tender in her upper traps or cervical paraspinals today. She was moderately tender in her lumbar paraspinals, mildly so in the buttocks bilaterally and very tender over both greater trochanters. She was not particularly tender today over her medial knees.
 {¶ 24} Dr. Wolfe concluded as follows:
I believe that Mrs. Lovejoy's symptoms are still most consistent with fibromyalgia, a diagnosis that she has been given by almost every physician whom she has seen. She is being treated for depression and anxiety, and that seemed to be under good control today with good affect, no evidence of tearfulness and the appropriate amount of concern one would expect on an independent medical examination.
I reviewed the extensive additional studies sent to me by SERS. In 2000, Mrs. Lovejoy had another CT scan and MRI. These seemed to show the same abnormalities that had been present in 1998, that is, `mildly' bulging discs at L2-3, L3-4 and L4-5, `mild' thecal sac effacement and `mild' facet arthropathy. None of that is any change from previous reports. Furthermore, Mrs. Lovejoy had extensive electrodiagnostic studies August 30, 2000 that were normal with both the EMG and nerve conductions. Additionally, the electromyographer in his clinical information noted totally normal ranges of motion and negative straight leg raising with normal neurologic findings. Again, multiple tender points were noted as each examiner has documented previously.
In summary, Mrs. Laura Lovejoy still has both clinical and objective evidence of fibromyalgia syndrome which would not, in my opinion, functionally impair her from driving a school bus. None of the documentation supports a progressive significant problem with her low back and, at least at the time of today's examination, she did well with respect to her diagnoses of anxiety and depression.
 {¶ 25} When asked whether relator was incapacitated for a period of at least 12 months, Dr. Wolfe responded that relator was not physically incapacitated.
 {¶ 26} 12. The medical reports from the examining physicians were then reviewed by the SERS medical advisory committee members, George H. Lohrman, M.D., Charles F. Wooley, M.D., and Timothy J. Fallon, M.D., for the purpose of providing an evaluation and recommendation to the committee chair and the School Employees Retirement Board ("Board").
 {¶ 27} 13. In March 2001, Dr. Lohrman provided a report to Edwin H. Season, III, M.D., the chair of the medical advisory committee. He noted the opinions of the treating physicians and SERS examiners, and he listed the medications that had been reported by Dr. Wolfe. In regard to relator's psychiatric condition, Dr. Lohrman noted that she had resumed treatment in October 2000, and his recommendation was against a finding of disability.
 {¶ 28} 14. In March 2001, Dr. Wooley provided a report. He described the opinions of the SERS medical examiners, Drs. Wolfe and Clary, and concurred that relator was not incapacitated from performing her usual duties as a bus driver. Dr. Wooley's medical recommendation was against disability status.
 {¶ 29} 15. In March 2001, Dr. Fallon provided a report, reviewing relator's job description as well as her complaints of being unable to climb, lift, sit or drive as required for driving a school bus, due to constant pain and decreased alertness. Dr. Fallon described the opinions of treating physicians as well as the diagnostic tests and medical history. Based on his review of the medical information, Dr. Fallon's opinion was that relator was not incapacitated at that time for continuing in her work as a school bus driver.
 {¶ 30} 16. On April 4, 2001, Dr. Season reported to the Board that the medical advisory committee recommended that disability retirement be denied.
 {¶ 31} 17. On April 19, 2001, the Board agreed with the recommendations of the medical advisory committee. On April 20, 2001, the Board notified relator that the Board disapproved her application.
 {¶ 32} 18. Relator appealed. SERS notified her that, in order to meet the requirements for appeal, her additional medical evidence must be current, consist of information not already considered by SERS, and be documented by a licensed physician specially trained in the medical field of the claimed disability.
 {¶ 33} 19. On July 7, 2001, claimant was reexamined by Dr. Walters, a neuropsychiatrist, who noted that claimant was currently taking Paxil, Klonopin, Sonota, Hydrocodone, and Neurontin. He stated that relator was complaining of constant pain and that her husband helped with household chores. Dr. Walters recounted her psychiatric history dating back to her son's death and described relator's reports of panic attacks. Relator stated that she was seeing Dr. Halley regularly.
 {¶ 34} The physical examination showed a normal gait, tenderness to palpation over the upper back, trapezius, lower spine, and medial knees. Range of motion of all joints was normal, and neurological examination was intact. There were no focal or long tract findings. In the mental status examination, relator was alert and oriented. She had driven to the examination and was on time, neatly dressed, and groomed. She was cooperative but anxious. She "reported her mood to be depressed" and said her appetite varied. She said her sleep was interrupted, and she reported occasional thoughts of suicide with no plans or intent. She felt that her energy level and concentration were decreased, but her thought processes were linear and goal directed. Memory was adequate, and insight and judgment were fair. Dr. Walters concluded that claimant suffered from severe recurrent depression and panic disorder in conjunction with fibromyalgia. Dr. Walters opined that relator was unable to work as a school bus driver. He explained that claimant's prescriptions caused drowsiness and impaired reaction time, thus rendering her unable to drive a bus safely.
 {¶ 35} 20. Relator filed Dr. Walters' report in support of her appeal and requested a hearing. On August 1, 2001, Dr. Season advised the Board that he had reviewed the report from Dr. Walters and concluded that it did not constitute "additional objective evidence" as defined in Ohio Adm. Code 3309-1-41 and that, based on review of the entire file, including the evidence submitted on appeal, the medical advisory committee saw no basis to change the Board's original decision. He recommended that the appeal be denied.
 {¶ 36} 21. In September 2001, SERS informed relator that the Board upheld its original decision to deny disability retirement.
 Conclusions of Law {¶ 37} Relator contends that SERS abused its discretion when it denied her August 2000 application for disability retirement benefits. First, relator argues that SERS abused its discretion in relying on the medical report of Dr. Wolfe for several reasons: she was not a disinterested physician as required under law; she rendered an opinion that was not consistent with her medical findings; and she failed to give adequate consideration to relator's medications. Second, relator contends that SERS abused its discretion in relying on the medical report of Dr. Clary because he did not consider all relator's psychological conditions and did not comment on the side effects of relator's medications. Third, relator contends that SERS abused its discretion in relying on the recommendation of its medical advisory committee because neither Dr. Wooley nor Dr. Lohrman was a disinterested physician and none of the committee members stated that they accepted the findings of the examining physicians. Fourth, relator contends that SERS abused its discretion in relying on Dr. Season's opinion that the July 2001 report did not constitute "additional objective medical evidence" on appeal because Dr. Season failed to explain the basis of his opinion. Relator contends that the July 2001 report was within the definition as a matter of law and SERS lacked discretion to reach any other conclusion.
 {¶ 38} First, R.C. 3309.39(C) states that SERS examinations are to be performed by "disinterested" physicians. The magistrate finds no evidence in the record that Dr. Wolfe had a financial or personal interest in the outcome of the application. There is no evidence that she had ever treated relator as her patient or had a familial, business, or other relationship with relator. Relator argues, however, that Dr. Wolfe had examined her previously for SERS, at which time Dr. Wolfe had felt relator was not disabled. Relator argues that, as a matter of law, Dr. Wolfe was incapable of rendering an objective opinion based on her 2001 examination, due to the fact that she had examined relator previously.
 {¶ 39} Relator cites no authority establishing a clear legal duty on the part of SERS to deem Dr. Wolfe as ineligible to examine relator in regard to the application filed in August 2000. Relator cites no legal authority for the proposition that SERS was barred as a matter of law from having Dr. Wolfe serve as a medical examiner based solely on her previous examination of relator. However, relator proposes that SERS should follow a policy instituted by the Industrial Commission for its specialist examinations.
 {¶ 40} It appears that the Industrial Commission has decided that it will not schedule a specialist examination with any physician who has treated or examined the claimant previously (whether on behalf of the claimant, the employer, the Bureau of Workers' Compensation, or the Industrial Commission). However, even for the Industrial Commission, the procedure is not a clear legal duty, in that the procedure is not required by the Ohio Revised Code, the Ohio Administrative Code, or case law. More importantly, even if the Industrial Commission were to promulgate a formal, administrative rule, that rule would not impose a clear legal duty on SERS to follow the same procedure. Relator has not established in mandamus that SERS abused its discretion in asking Dr. Wolfe to serve as a medical examiner; relator has not met her burden of proving that Dr. Wolfe was ineligible to serve as an examining physician under the statutory requirement for a "disinterested physician."
 {¶ 41} Next, the magistrate finds no patent inconsistency between Dr. Wolfe's clinical findings and her medical opinions, nor between her medical opinions and the objective tests reviewed in her report. Dr. Wolfe simply did not agree with the medical opinions of Drs. Stockwell and Walters that the clinical presentation and medical file warranted the conclusion that relator was incapacitated for the next 12 months from performing her duties. As to relator's medications, Dr. Wolfe demonstrated that she was fully aware of them, explicitly listing in her report the information that relator had provided. Further, the report shows that Dr. Wolfe was aware of relator's statements regarding her needs for pain medication and was also aware of relator's former job. After reciting all these facts and many others, including results of examination and diagnostic tests, Dr. Wolfe concluded that relator was not physically incapacitated from returning to her school employment. The magistrate finds no patent medical flaws or other defects that would require the court to issue an extraordinary writ barring the report from consideration by the Board or its advisory committee.
 {¶ 42} For the court to disagree with Dr. Wolfe and rule in relator's favor on this issue, it would be necessary for this court to review the medical literature and relator's medical file and to determine (a) that relator in fact needs these medications regularly for at least 12 months and (b) that these medications would necessarily cause relator to be unable to perform her job for at least 12 months. Relator essentially asks the court to determine that the medical opinions of Drs. Clary, Wolfe, Wooley, Lohrman, Fallon and Season were all defective because they all missed a crucial fact — that the medications necessarily preclude relator from being employed as a bus driver for a period of at least 12 months. The magistrate declines to conclude that all these medical opinions are defective or to conclude that the mere fact of the prescriptions required SERS to grant disability retirement.
 {¶ 43} The magistrate recognizes that, in workers' compensation cases, the courts sometimes identify on the face of a disability report a patent inconsistency that bars the report from evidentiary consideration by the administrative agency. E.g., State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582; State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445. However, the courts have also declined to "second guess" the medical opinions and expertise of physicians. E.g.,State ex rel. Young v. Indus. Comm. (1997), 79 Ohio St.3d 484;State ex rel. Consolidation Coal Co. v. Indus. Comm. (1997),78 Ohio St.3d 176. Thus, in some circumstances, there may be a substantial defect in a medical report or an inconsistency that is so obvious that it is readily evident to the reasonable layperson, and the court may remove such a report from evidentiary consideration as a matter of law. See Lopez, Taylor.
However, where the alleged defect is not patent on the face of the report but involves views regarding the best medical practice and proper advice in the profession or involves an application that may differ from patient to patient or an opinion that may differ from doctor to doctor, then the courts do not exclude a doctor's opinion as a matter of law. See Young; ConsolidationCoal.
 {¶ 44} In the present action, the magistrate accepts that reference works uniformly indicate, for example, that hydrocodone is chemically related to codeine and may cause side effects lasting for several hours including drowsiness, dizziness and blurred vision. The risks of operating motor vehicles while under the effects of such medication are known. Further, the medical literature indicates that hydrocodone is not properly prescribed for long-term use by patients due to risks of dependency and other side effects. In the present case, whether relator needs this medication and whether she should be using this medication for at least 12 months are questions that appear reasonably subject to debate among physicians. While there are a variety of potential side effects and long-term harms, the potential risks are particularly within the knowledge and understanding of physicians, who have differed in their opinions in the present case. However, none of the medical opinions appear patently illogical or inconsistent on the faces of the reports, even though the doctors reached differing conclusions. The reports of Drs. Clary, Wolfe, and others do not fall into the category of reports in which the medical report has no evidentiary value because the contents are obviously inconsistent internally.
 {¶ 45} Accepting the general information available in the medical literature about medicines such as hydrocodone, the magistrate nonetheless concludes that this information is subject to interpretation by physicians in each patient's case. Here, the magistrate believes that each of the physicians retained the professional judgment to make a medical assessment about whether this particular worker, based on her symptoms, complaints, findings and/or treatments, was incapacitated from performing her job for a period of at least 12 months. Neither the medical examiners nor the Board were legally required to accept relator's complaints of constant pain; the fact that relator's attending physician prescribed controlled medications to treat his patient's complaints of pain does not automatically require a finding of disability.
 {¶ 46} While the magistrate agrees that a prudent person's actual use of hydrocodone on any particular day should prompt that person to refrain operating a school bus within some hours of taking the medicine, depending on the particular warnings provided with the medication, the magistrate concludes that a person's having a prescription for the medicine need not obligate all examining physicians to reach the conclusion that the person is incapacitated from performing her job for at least 12 months. For this court to hold as a matter of law that a prescription for a certain medication renders a person disabled from working for a period of at least 12 months would be to usurp the function of the medical experts and the Board.
 {¶ 47} Relator's second issue is that SERS abused its discretion in relying on the medical report of Dr. Clary because he did not consider all relator's psychiatric conditions. The magistrate finds no merit in this argument. Dr. Clary's report mentions all the psychiatric conditions that relator claimed to have. Unlike the situation in a workers' compensation claim, there are no formally accepted diagnoses or "allowed" conditions that SERS and the examining physicians must accept. Rather, SERS simply asks its medical examiners to evaluate the medical condition(s) identified in the attending physician's portion of the application. The medical examiners are not required to agree that the conditions exist now or ever existed; they are obliged only to evaluate whether the claimed conditions cause a specific incapacity to work. Here, Dr. Clary noted in his report that claimant complained of panic attacks but said that he found no "clear history" documenting the attacks. He showed his awareness of relator's complaints of panic attacks but simply opined that there was no clear history in regard to that condition, which is a qualitative assessment rather than a negation of her complaints. In sum, the magistrate disagrees that Dr. Clary failed to address relator's reported panic attacks.
 {¶ 48} Third, relator contends that SERS abused its discretion in relying on the recommendation of its medical advisory committee because neither Dr. Wooley nor Dr. Lohrman was a "disinterested physician" and none of the committee members stated that they accepted the findings of the examining physicians. As discussed with regard to Dr. Wolfe, above, the requirement of "disinterested" physicians is statutory and applies only to examining physicians. Thus, the requirement would not apply specifically to the advisory committee physicians expressly. However, even in the absence of a statutory mandate, the magistrate concludes that, where an applicant presented evidence that one of the committee members recommending against disability status had a personal interest in denying benefits, the court could consider whether SERS has a legal duty to exclude that committee member from participation in the application process.
 {¶ 49} Here, however, there is no evidence of any interest that would render any of the committee members ineligible to participate in the task of providing medical recommendations to the SERS Board. There is no evidence that Dr. Wooley or Dr. Lohrman had a conflict of interest that would require his removal from the committee in this instance. The mere fact that two physicians were on the committee that had reviewed the relator's prior requests does not make them improperly "interested" in the outcome of the August 2000 application. To assume as a matter of law that any doctor who participated in a prior application process is necessarily incapable of looking at the current medical presentation with an open mind is an assumption not warranted by the current law or the facts in this case.
 {¶ 50} The next issue is whether the medical advisory committee members had a clear legal duty to accept the clinical findings of all the examining physicians. The magistrate notes that neither the SERS statutes, the administrative rules, nor the courts have imposed a legal duty on the SERS medical advisory committee to adopt the clinical findings of all the examining doctors. Again, relator asks the court to apply requirements applicable to workers' compensation hearings.
 {¶ 51} However, the SERS procedures are not sufficiently similar to those in a workers' compensation hearing on disability, where one party may present an examining physician's opinion and another party may present an opposing opinion from a mere file reviewer, and the finder of fact must choose one or the other on which to rely. Under SERS procedures, there are no opposing parties. The applicant submits a current examining physician's opinion with the application, with separate reports for each medical specialty that is involved. Then, SERS obtains more examination reports from independent physicians. However, the members of the Board are laypersons such as school cooks and school bus drivers. See State ex rel. Schmidt v. School Emp.Retirement Sys., 150 Ohio App.3d 597, 2002-Ohio-6757. Because there may be many medical reports from physicians in various specialties, addressing a variety of different medical conditions, the Board has medical advisors to review the reports and to provide a medical summary and recommendation. However,all the underlying reports in the present case were from examining physicians. The medical advisors, not representing any party, simply provided an overview of all the examination reports in combination. The magistrate does not agree that the principles applicable to workers' compensation hearings must be applied to these SERS proceedings. Further, the magistrate finds no defect in the opinions of Drs. Clary, Wolfe, Wooley, Lorhman, Fallon, and/or Season that would remove their reports from SERS consideration as a matter of law.
 {¶ 52} Fourth, relator contends that SERS abused its discretion in relying on Dr. Season's conclusion that the July 2001 report did not constitute "additional objective medical evidence." Relator argues that Dr. Season failed to set forth his reasoning, and further argues that the July 2001 report of Dr. Walters was within the definition as a matter of law and that SERS lacked discretion to reach any other conclusion.
 {¶ 53} First, while the courts have required the Industrial Commission to provide a brief explanation of its rationale, underState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, the courts have not required that physicians rendering opinions for consideration by the commission have a legal duty to explain the basis of their opinions. The lack of explanation or depth of explanation goes to the weight and persuasiveness of the doctor's opinion, not its admissibility.
 {¶ 54} In regard to SERS proceedings, however, the courts have found no duty to comply with the principles of Noll. Under present law, SERS has a duty to provide a written decision but no duty to identify the evidence on which it relied or provide an explanation of its rationale. See, e.g., Schmidt, supra; Stateex rel. Copeland v. School Emp. Retirement Sys. (Aug. 5, 1999), Franklin App. No. 98AP-1173, appeal dismissed (2000),88 Ohio St.3d 1507.
 {¶ 55} Given that SERS has no legal duty to comply withNoll principles, the magistrate sees no basis for requiring SERS physicians to comply with Noll. In sum, the magistrate finds no clear legal duty on the part of a physician in an SERS proceeding to provide any particular level of explanation of his or her conclusion. While such explanations undoubtedly are helpful, a physician's failure to give adequate explanations of his or her conclusions does not require exclusion of the report by SERS under current law.
 {¶ 56} Next, the magistrate addresses whether SERS abused its discretion in concluding that the July 2001 report of Dr. Walter was not within the definition of "additional objective medical evidence." Ohio Adm. Code 3309-1-41(A)(3) defines "additional objective medical evidence" as (1) current medical evidence, (2) documented by a licensed physician, (3) specially trained in the field of medicine pertinent to the illness or injury for which disability is claimed, and that (4) has not heretofore been submitted, and that (5) does not merely contain or reiterate findings or information contained in documents or evidence previously submitted. The code explicitly states that all medical evidence submitted on appeal shall be reviewed by a member of the medical advisory committee who shall advise as to its status as "additional objective medical evidence."
 {¶ 57} The magistrate concludes that relator has not met her burden of proving that Dr. Walters' report of July 2001 presented new medical information to the Board on appeal that it had not previously considered. The medical findings in the July 2001 report are essentially the same as those reported previously by Drs. Stockwell, Tadepalli, Clary, Wolfe, and the numerous other reports submitted with the application. Although Dr. Walters gave much more detail regarding some matters, and he indicated that claimant had reported a worsening of some symptoms, he did not provide in his July 2001 report any information that was fundamentally new or different. For example, Dr. Stockwell had asserted from the beginning that relator's symptoms were worsening over time, so Dr. Walters' description of worsening symptoms was simply a confirmation of what had already been stated as expected. Claimant's indication that she was doing fewer household chores or having worse panic attacks was not materially new information. In addition, relator emphasizes that the July 2001 report stated that she had changed a medication, and she argues that this was sufficient to change the character of the disability information presented in the new report. The magistrate disagrees. An adjustment in a medication need not signal a change in functional capacity or an increase in disability. After SERS has obtained medical examinations and reviewed all the medical reports, a mere change in a person's medication should not automatically justify an appeal on the basis of additional objective medical evidence. The magistrate concludes that, although some of Dr. Walters' descriptions differed somewhat in degree or in the level of detail from those presented in previous reports, he provided no new or different medical data or proofs of disability that were previously unconsidered by SERS. SERS had discretion to determine that there was no additional objective medical evidence, as defined, on appeal.
 {¶ 58} Based on the foregoing, the magistrate concludes that a writ of mandamus is not warranted to compel SERS to exclude the reports of Drs. Wolfe, Clary, Wooley, Lohrman, Fallon and/or Season, nor to compel consideration of the July 2001 report of Dr. Walters. Accordingly, the magistrate recommends denial of the requested writ of mandamus.